# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA – OCALA DIVISION

| | |
|---|---|
| BARBARA VAUGHN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>FCA US LLC,<br><br>        Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**<br><br>5:18 CV-65.OC- 30PRL<br><br>**JURY TRIAL DEMANDED** |

FILED

2018 FEB -9  PM 12: 33

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

00130367

Plaintiff Barbara Vaughn ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to herself and on information and belief as to all other matters, by and through undersigned counsel, hereby brings this Class Action Complaint against Defendant FCA US LLC, formerly known as Chrysler Group LLC ("Chrysler" or "Defendant"), and alleges as follows:

## NATURE OF THE CASE

1.      Chrysler's 2017 Pacifica minivans contain a serious safety defect that causes the vehicle's engine to shut off, idle only, or prevent acceleration. Chrysler advertises its minivan as a family car with above-average, "advanced" safety features. In reality, because of a common defect, the minivans can be death traps, posing a serious safety risk to the vehicle's occupants and other motorists.

2.      Chrysler manufactures and sells hybrid and non-hybrid models of the 2017 Pacifica. Both the hybrid and non-hybrid models have a defect that leads to a sudden, unintentional, and complete loss of power. Indeed, there are widespread reports of the defect in both models, and Chrysler has acknowledged the defect reports about both Pacifica models. However, Chrysler has attempted to repair only the hybrid model of its Pacifica minivan. Chrysler has never publicly announced or done anything about the defect present in the more than 160,000 non-hybrid 2017 Pacifica minivans sold to date (the "Subject Vehicles").

3.      Chrysler has known of the common defect, yet has failed to disclose the existence of this defect to Plaintiff, other Class members, or the public. Instead, Chrysler has downplayed and covered up the defect, and continued to equip the Subject Vehicles with the

00130367

defective parts or systems. As a result, Chrysler has failed to provide the cars it promised to Class members, and continues to leave more than 160,000 drivers and untold numbers of passengers unaware that they are riding in a vehicle that contains a defect that leads to sudden, unintended, and complete loss of motor power.

4.      Naturally, drivers of the Pacifica family vehicle have expressed outrage and fear about the sudden loss of motor power defect. For example, owners have stated: "I am fearful now it will happen when I am going higher speeds;" "I have 6 kids and don't feel safe driving them in the vehicle;" "This is highly dangerous;" "Please recall before someone gets seriously injured on the highway;" "I am terrified to drive my car now;" "[A]ll of a sudden I had a sudden jerk and loss of power with no ability to accelerate, no power steering, and various warning lights flashing;" and "This is a very serious safety situation. My family could have been seriously injured or killed last night."[1]

5.      Given the uniform defect, Plaintiff and the other Class members purchased and leased Subject Vehicles that are of a lesser standard, grade, value, and quality than represented, and they did not receive vehicles that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

6.      As a result of Defendant's unfair, deceptive, and fraudulent conduct, owners of the Subject Vehicles have suffered loss of money, suffered injury in fact, and incurred damages.

---

[1]      These owner complaints, each of which Chrysler is previously aware of, are reproduced in full below.

## JURISDICTION AND VENUE

7.     The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1332(d), because: (a) this action is brought as a proposed class action under Fed. R. Civ. P. 23; (b) the proposed Class includes more than 100 members; (c) many of the proposed Class members are citizens of states that are diverse from Chrysler's citizenship; and (d) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

8.     Venue is proper in this District under 28 U.S.C. §1391(a) because a substantial part of the challenged conduct or omissions giving rise to claims occurred and/or emanated from this District, and Chrysler has caused harm to Class members residing in this District.

## PARTIES

9.     Plaintiff Barbara Vaughn is a resident of Summerfield, Florida. In October 2017, Mrs. Vaughn purchased a 2017 model year, non-hybrid Chrysler Pacifica from Bill Bryan Chrysler Dodge Jeep Ram, located at 3401 US-441, Fruitland Park, FL 34731. Mrs. Vaughn purchased her vehicle believing it was safe, and did not contain the defect described in this complaint. She lost money and property as a result of Chrysler's conduct. She would not have purchased her Chrysler Pacifica or paid as much to purchase the vehicle if she knew it was defective, unsafe and potentially deadly to herself and others because it contains a defect that leads to sudden unintended power loss.

10.     Defendant FCA US LLC, formerly known as Chrysler Group LLC ("Chrysler") is headquartered in Auburn, Michigan. Chrysler manufactures, markets, distributes, sells and services the Subject Vehicles.

3

00130367

## FACTUAL BACKGROUND

11.     In June 2016, Chrysler began selling its 2017 model year Pacifica minivan. The Pacifica is equipped with one of two drive-trains: a conventional 3.6 liter engine, and a plug-in 3.6 liter gas-electric hybrid. At issue in this lawsuit is the non-hybrid 2017 Chrysler Pacifica.

12.     Chrysler has long known that the Subject Vehicles are defective through various sources that include: (1) its own records of customer complaints; (2) dealership records; (3) records from and to the National Highway Traffic Safety Administration (NHTSA); (4) a petition for a NHTSA defect investigation submitted by the Center for Auto Safety; (5) warranty and post-warranty claims; and (6) complaints posted to online blogs monitored by Chrysler.

13.     Furthermore, Defendant is experienced in the design and manufacture of consumer vehicles. In keeping with industry standards, Defendant conducts tests, including pre-sale durability testing, on incoming components to verify the parts are free from defect and comply with Defendant's specifications. Thus, Defendant knew or should have known the Subject Vehicles were defective and prone to put drivers and passengers in dangerous positions due to the inherent risk of the defect at issue.

14.     As of January 3, 2018, NHTSA has posted complaints from more than 70 owners relating to the stalling defect in the Subject Vehicles. Chrysler has acknowledged receiving additional complaints as well.

15.     As demonstrated by these complaints, the dangerous and potentially deadly consequence of the uniform defect leaves drivers unable to accelerate, decelerate, or utilize

4

power steering. For example, a representative example of one of the complaints made to NHTSA about the defect is reproduced below:

> MY WIFE STOPPED AT AN INTERSECTION AND THE CAR COMPLETELY SHUTOFF. A MESSAGE APPEARED STATING PLEASE PUT CAR IN PARK TO START VEHICLE. IT HAPPENED WITHIN TWO WEEKS OF PURCHASING THE VEHICLE, AROUND 300 MILES DRIVEN. WE ARE CONCERNED TO DRIVE IT AS WE HAVE THREE SMALL CHILDREN. I TOOK IT BACK TO THE DEALER AND THEY COULDN'T REPRODUCE IT AND REFUSED TO TAKE THE CAR BACK. *__I CONTACTED CHRYSLER AND THEY SAID THEY WOULD NEED TO REPRODUCE IT SO WAIT UNTIL IT HAPPENED AGAIN. THIS IS UNSATISFACTORY TO ME AS IT IS PUTTING MY FAMILY AT RISK. IT APPEARS THEY ARE WAITING FOR SOMEONE TO DIE TO DEAL WITH THE ISSUE__*. AND EVEN AT THAT DEAD MEN TELL NO TAILS, SO THEY PROBABLY WOULDN'T BE ABLE TO ATTRIBUTE THE ACCIDENT TO THIS STALLING ISSUE, AND NOTHING WILL BE ADDRESSED. THIS NEEDS TO BE RECALLED OR VEHICLES DISPLAYING THIS ISSUE SWAPPED OUT.[2]

16.     Despite being on notice of the uniform defect, Chrysler has never issued a recall or told Subject Vehicle owners or lessees about the defect that reduces the vehicle's value, and presents a harrowing propensity for complete power loss events. Instead, Chrysler has attempted to sweep this defect and its life-threatening consequence under the rug, and continues to manufacture and sell Pacifica minivans containing this defect.

17.     Chrysler has a history of manufacturing and selling vehicles that contain defects resulting in complete power loss.

18.     In 2016, Chrysler announced a safety recall of all 2013-2016 model year Chrysler Fiat 500e vehicles because the vehicles "may experience voltage spikes which can

---

[2]     https://www.nhtsa.gov/vehicle/2017/CHRYSLER/PACIFICA/VAN/FWD  (emphasis added) (complaint dated November 29, 2017).

00130367

cause the propulsion system to shut down." According to Chrysler, "The consequence [] is a loss of motive power," which "could cause a crash without warning."[3] Chrysler estimated that 100% of its 16,549 Fiat 500e vehicles had this dangerous defect.[4]

19.     In June 2017, Chrysler acknowledged to NHTSA that the hybrid version of its 2017 Pacifica minivan has a uniform "defect" present in "100%" of the vehicles. According to Chrysler, the defect "will cause the vehicle to lose motive power without warning", "not power back on" and "could cause a crash without warning."[5] However, Chrysler did not publicly announce or acknowledge the defect at the time it admitted its existence to NHTSA. Instead, Chrysler waited another four months to finally notify Pacifica hybrid owners about the dangerous defect, issue a safety recall of the 2017 Pacifica hybrid vehicles, and offer to address the admitted defect. Even then, Chrysler did nothing to address the defect in the subject, non-hybrid Pacifica minivans.

20.     On November 20, 2017, the Center for Auto Safety officially petitioned NHTSA to open a defect investigation into the power loss defect in the 2017 Chrysler Pacifica. According to the Center for Auto Safety, "More than 50 individuals have reported to NHTSA that their 2017 Chrysler Pacifica vehicles have stalled without warning." The Center for Auto Safety urged that the 2017 Pacifica be recalled by NHTSA, because otherwise "150,000 Chrysler minivan owners are left to wonder when, and where, their vehicle will stall, and hope that it does not create a life-threatening situation."

---

[3]     https://static.nhtsa.gov/odi/rcl/2016/RCONL-16V303-0805.pdf
[4]     https://static.nhtsa.gov/odi/rcl/2016/RCLRPT-16V303-1099.PDF
[5]     https://static.nhtsa.gov/odi/rcl/2017/RCMN-17V371-7252.pdf;
https://static.nhtsa.gov/odi/rcl/2017/RCONL-17V371-2096.pdf

21.    Rather than recall the Subject Vehicles, Chrysler has downplayed and denied the existence of a defect. Chrysler told the New York Times for an article published November 20, 2017, that it is "aware of the complaints and is looking into the matter, but has not found information pointing to a specific, widespread or consistent problem."[6]

22.    Contrary to Chrysler's statements, there are specific, widespread and consistent complaints about unsafe, sudden unintended power loss events with the Subject Vehicles. Some owners report experiencing the power loss events within hours of purchasing the Subject Vehicle, and others report first experiencing power loss after more than 15,000 miles of driving. Owners have also reported that the dealer service technicians have not been able to identify the problem and/or that the problem continues to occur even after dealer service technicians attempt to repair the Subject Vehicles. Representative examples of the Subject Vehicle complaints made to NHTSA include:[7]

- WHILE DRIVING 60MPH ON I-55 ON DEC 26, 2017 WITH MY SICK NEWBORN BABY IN THE VAN MY 4 MONTH OLD 2017 PACIFICA STALLED ON ME IN THE CENTER LANE OF THE HIGHWAY. I WAS NOT ABLE TO PRESS THE BRAKES NOR STEER THE CAR. I SOMEHOW MANAGED TO MOVE OVER TO THE SHOULDER BY JERKING AT THE WHEEL I BARELY MADE IT ON TO THE SHOULDER AND THE VAN SHUT OFF COMPLETELY AND LOST ALL POWER. I CALLED ROADSIDE ASSISTANCE ONLY TO SIT ON HOLD FOR OVER 20 MINS. I THEN CALLED THE DEALERSHIP BACK AND THEY SENT A PRIVATE TOW TRUCK OUT TO ME. OVERALL I SAT FOR 1.5 HOURS BEFORE HELP ARRIVED. I WAS EXTREMELY COLD AND AFRAID FOR OUR SAFETY AS SEMI TRUCKS AND CARS

---

[6]    https://www.nytimes.com/2017/11/20/business/chrysler-pacifica.html

[7]    All complaints to NHTSA have been reproduced as originally written and may contain spelling or grammatical errors. The complaints are available at https://www.nhtsa.gov/vehicle/2017/CHRYSLER/PACIFICA#complaints.

00130367

SWERVED AROUND ME. THE VAN WAS TAKEN TO THE DEALERSHIP AND THEY ARE REPORTING THAT THE ALTERNATOR WENT OUT IN ADDITION TO ISSUES OF SEVERAL ELECTRICAL CODES THAT CAME UP. AGAIN, THIS IS A BRAND NEW VAN THAT I HAVE ONLY HAD FOR 4 MONTHS. I CALLED FCA ON 12/26/2017 AND 12/28/2017 TO FOLLOW UP AND I AM STILL WAITING ON A CALL BACK. (ODI 11057809)[8]

- WE PURCHASED A PACIFICA ON 12/21/2017. NOT EVEN AN HOUR AFTER LEAVING THE DEALERSHIP THE VEHICLE STALLED, LOSING ALL POWER, AND HAD TO BE RESTARTED TO REGAIN POWER AND DRIVING ABILITY AT A STOP LIGHT. WE WERE NOT HIT, BUT IT IS VERY DANGEROUS TO HAVE A VEHICLE THAT STALLS RANDOMLY. (ODI 11056049)

- ON 4 OCCASIONS I LOST ABILITY TO ACCELERATE. I PUSH ON THE GAS AND THE CAR WON'T GO. IT JUST STOPS OR STALLS. THE POWER IS ON BUT CAR WON'T GO. I SEEM TO LOSE SOME POWER STEERING. TWICE THIS WAS WHILE MAKING A LEFT TURN WITH TRAFFIC COMING TOWARD ME ON A BUSY STREET. I WAS STALLED IN THE MIDDLE OF THE ROAD. FINALLY THE VAN BEGAN TO WORK AGAIN AND SHOT ME FORWARD ABRUPTLY. TODAY 11/27/17 I BROUGHT IT TO CHRYSLER DEALERSHIP. THEY ARE TELLING ME A SOFTWARE UPDATE WILL FIX IT BUT I'M SKEPTICAL AND AFRAID TO DRIVE IT. (ODI 11048832)

- THE ENGINE SHUTS OFF WHILE DRIVING. DISPLAY SAYS ENGINE START/STOP UNAVAILABLE. ENGINE WONT RESTART UNTIL START/STOP SYSTEM IS AVAILABLE AGAIN. ENGINE SHUTS OFF RANDOMLY, EVEN AT HIGHWAY SPEEDS. DID IT ON THE HIGHWAY, GOING DOWN CITY STREETS AT 30MPH, AND EVEN DID IT BACKING OUT OF THE DRIVEWAY. (ODI 11048661)

- MY CAR ON OCCASION HAD BEEN FEELING LIKE IT WAS CUTTING OUT, I THOUGHT I GOT SOME BAD GAS SO I SWITCHED STATIONS AND NOTICED IT LESS. THEN ABOUT A

---

[8]     The term "ODI" means NHTSA's Office of Defects Investigation.

MONTH LATER, IT JUST TURNED OFF IN ROUTE. I WAS AT A FOUR WAY STOP ACCELERATED TO GO AND IT STARTED OUT, I MADE IT INTO THE MIDDLE OF THE INTERSECTION AND THE CAR TURNED OFF. IT GAVE A NOTICE BY STEERING COLUMN THAT IT NEEDS TO BE IN PARK TO START ENGINE OR SOMETHING. IT DID IT WITH ABOUT 13,000 MILES ON IT. I WAS ABLE TO START THE VAN AFTER I PUT IT IN PARK WITH FOOT ON BRAKE AND CONTINUE ON. IT HAPPENED SO FAST I WAS NOT SURE WHAT WENT WRONG? NOW I READ THAT MANY HAVE HAD THIS HAPPEN AS WELL. I AM FEARFUL NOW IT WILL HAPPEN WHEN I AM GOING HIGHER SPEEDS, ETC. THIS NEEDS TO BE FIXED! (ODI 11048090)

- ON 2 DIFFERENT OCCASIONS OUR CHRYSLER PACIFICA HAS "STALLED OUT" WHILE WE WERE DRIVING. BOTH INSTANCES OCCURED WHILE WE WERE ON A HILL. THE FIRST WAS PULLING UP INTO A DRIVEWAY AFTER THE VEHICLE WAS STOPPED AND WE TRIED TO PULL FORWARD. THE SECOND HAPPENED WHEN WE WERE ON THE ROAD AT A STOP SIGN FACING UPHILL. AS WE STARTED TO TRY AND DRIVE FORWARD FROM THE STOP SIGN, THE ENGINE SHUT OFF. IN BOTH INSTANCES, THE CAR HAD TO PUT IN PARK AND RESTARTED. WE HAVE ONLY HAD THE VEHICLE A LITTLE OVER TWO MONTHSAND THERE WERE LESS THEN 2,000 MILES ON THE VEHICLE. (ODI 11047960)

- I REPORTED THIS ISSUE TO MY DEALER 8/21/17 AND HAVE THE EMAIL CHAIN SAVED. THE DEALER COULDN?T REPLICATE THE ISSUE. WHILE DRIVING 60-70 MPH ON 5 LANE HIGHWAY, ENGINE SHUT DOWN. LUCKILY, I WAS IN THE FAR RIGHT HAND LANE AND WAS ABLE TO MUSCLE MY VEHICLE OVER TO THE BURM (THERE WAS NO POWER STEERING). MESSAGE ON DASH SAID ?SHIFT TO P TO PARK? OR SOMETHING LIKE THAT. MY VEHICLE WAS IN DRIVE AND I COULDN?T SHIFT IT TO PARK. EVENTUALLY IT BEGAN WORKING. I HAVE 6 KIDS AND DON?T FEEL SAFE DRIVING THEM IN THE VEHICLE. HAPPENED A FEW THOUSAND MILES AGO; VEHICLE CURRENTLY HAS 10,500 MILES. HASN?T

00130367

HAPPENED AGAIN, BUT HAVE TO CONSIDER THE POSSIBILITY IT COULD. (ODI 11047936)

- WHILE DRIVING DOWN THE ROAD MY VEHICLE EXPERIENCED COMPLETE LOSS OF POWER. I HAD TO MANUALLY STEER IT TO THE SIDE OF THE ROAD. AFTER SEVERAL MINUTES IT RESTARTED AND RAN FINE. THIS HAPPENED RIGHT AT 6000 MILES AND AGAIN AT 6973 MILES, SAME SCENARIO WITH BOTH. THE DOORS AND RADIO IS ALSO ACTING ODD. I BELEIVE THERE IS SOME SORT OF ELECTRICAL ISSUE. BOTH TIMES BEFORE THE VEHICLE POWERED DOWN I WAS GOING 70 +MILES AN HOUR, HEAT CAME ALL THE WAY ON AND POWER SHUT DOWN. MY STAR # IS 1728582. CHRYSLER TOLD ME MAYBE I WAS DRIVING TO FAST???? VEHICLE US ONLY 3 MONTHS OLD. DEALERSHIP CONFIRMED THEY HAD ANOTHER PACIFICA IN THE SHOP FOR THE SAME REASON...UPDATED 11/07/17 *BF (ODI 11039494)

- SUDDEN ENGINE FAILURE AND POWER LOSS WHILE DRIVING. ERROR MESSAGES DISPLAYED ON DASH INDICATING FAILURE OF ELECTRONIC STABILITY CONTROL AND TRANSMISSION, ALONG WITH CHECK ENGINE LIGHT. THIS ISSUE STARTED INTERMITTENTLY, BUT BECAME SO SEVERE THAT IT WOULD HAPPEN MULTIPLE TIMES IN A SHORT <10 MILE TRIP. TO RECOVER, THE CAR MUST BE STOPPED, TURNED OFF, AND THEN RESTARTED....UPDATED 11/03/17 *BF. (ODI 11035468)

- MY WIFE WAS DRIVING ON A CITY HIGHWAY AT A NORMAL RATE OF SPEED DURING RUSH HOUR AND THE VEHICLE'S ENGINE SUDDENLY SHUT OFF AND THE VEHICLE ABRUPTLY SLOWED. THE DASH BOARD THEN SHOWED A MESSAGE THAT READ "SHIFT TO P TO START." THANKFULLY SHE WAS ABLE TO STEER THE CAR TO THE SHOULDER WITHOUT BEING HIT BY ANOTHER DRIVER. AS SOON AS THE CAR CAME TO A FULL STOP SHE WAS ABLE TO TURN THE ELECTRONIC SHIFTER TO PARK AND RESTART THE CAR. (ODI 11033417)

00130367

- ON 6 DIFFERENT OCCASIONS MY 2017 CHRYSLER PACIFICA HAS SHUT DOWN WHILE DRIVING. THE CAR IS IN MOTION AND THE ENGINE TURNS OFF. THE SCREEN DISPLAYS "PUT CAR IN PARK AND PRESS START BUTTON". AT THIS POINT THE CAR IS COASTING ALONG THE ROAD. YOU HAVE TO ATTEMPT TO GET OFF THE ROAD AND PUT THE CAR IN PARK TO RESTART. THE CAR DOES RESTART, BUT THIS IS HIGHLY DANGEROUS.

  MY VEHICLE IS CURRENTLY AT THE DEALER WHERE I AM BEING TOLD THEY ARE UNABLE TO DUPLICATE THE ISSUE. ...UPDATED 10/25/17 *BF (ODI 11032016)

- ENGINE SHUT DOWN WITH NO WARNING AT 15,197 MILES WHILE PULLING OFF THE FREE-WAY. HAD VEHICLE SERVICED AT DEALER AND THEY REPLACED PART NUMBER 68277373AF WITH NEW PART NUMBER 68303489AM AND FLASHED NEW PART. AT 16,068 MILES ENGINE SHUT DOWN AGAIN WHILE TRAVELING DOWN CITY STREET. RETURNED TO DEALER AND WAS TOLD NO ISSUE WAS RECORDED ON THE VEHICLE MODULE OF THE SHUT DOWN. THEY KEPT IT SEVERAL DAYS AND STILL DON'T HAVE AN ANSWER AS TO WHY IT SHUT DOWN. SO FAR IT HAS ONLY SHUT DOWN WHEN I HAVE BEEN ON A CITY STREET. I'M VERY CONCERNED AS TO WHAT WILL HAPPEN IF THIS HAPPENS ON THE HIGHWAY. THE VEHICLE HAS TO BE PUT IN PARK TO RESTART. PLEASE RECALL BEFORE SOMEONE GETS SERIOUSLY INJURED ON THE HIGHWAY. (ODI 11029903)

- 2017 PACIFICA TOURING-L ENGINE SHUTDOWN COMPLETELY WHEN DRIVING AT ABOUT 35-40 MPH ON A CITY STREET WHEN I SLOWED DOWN FROM 45 MPH. THE VAN IS LESS THAN A YEAR OLD AND HAS ABOUT 10000 MILES ON IT. SCREEN DISPLAYED MESSAGE 'SHIFT TO PARK AND RESTART VEHICLE'. I TRIED RESTARTING WITHOUT STOPPING THE CAR AS THERE WERE CARS BEHIND ME AND I SAW THE MESSAGE "TOO FAST TO SHIFT TO PARK" AND THE POWER STEERING WAS ALSO CUT OFF BECAUSE IT IS ELECTRONIC. I HAD TO PARK ON THE SHOULDER AND RESTART AFTER A COMPLETE STOP.

CONTACTED MY CHRYSLER DEALER AND HE TOLD ME THAT UNLESS THERE IS A CODE NO DIAGNOSIS IS POSSIBLE. I'VE DROPPED MY CAR TODAY MORNING – NO UPDATES AS YET. (ODI 11025266)

23. As far back as May 20, 2017, a Subject Vehicle owner made a public complaint about the sudden unintended power loss to NHTSA:

I WAS TURNING INTO A PARKING LOT AND MY 2017 CHRYSLER PACIFICA SUDDENLY TURNED OFF. THE DISPLAY SAID SOMETHING ALONG THE LINE OF "CAR MUST BE IN PARK." I HAD TO PUT MY CAR BACK IN PARK AND RESTART THE ENGINE. I WAS ALMOST REAR ENDED BY ANOTHER CAR WHO WAS NOT EXPECTING ME TO STOP. NOW THAT I AM RESEARCHING THIS ISSUE, I'M FINDING THAT SEVERAL OTHER PEOPLE HAVE HAD THIS ISSUE AND CHRYSLER HAS NO IDEA WHY IT'S HAPPENING. I AM TERRIFIED TO DRIVE MY CAR NOW. WHAT IF THIS HAPPENS ON THE EXPRESS WAY TRAVELING AT HIGH SPEEDS OR WHILE DRIVING THROUGH THE MOUNTAINS?[9]

24. In addition to the complaints made directly to NHTSA, there are other widespread complaints reported online about this dangerous defect. For example, one online blog, www.pacificaforums.com, contains similar complaints from over 40 Subject Vehicle owners, including the examples below.[10] Chrysler is aware of these complaints, some of which a "Chrysler Social Care Specialist" has responded to.

- We have had our 2017 Pacifica for just over a month with 1000 miles on the clock. My wife was driving it around time dropping kids off at school and it suddenly lost power and showed indicators telling her to put it into park. Turning the gear selector made no difference. She tried to keep driving but there was no power going from the engine to the

[9] https://www.nhtsa.gov/vehicle/2017/CHRYSLER/PACIFICA#complaints

[10] All complaints from pacificaforums.com have been reproduced as originally written and may contain spelling or grammatical errors.

12

wheels. She had no choice but to shutdown and start it again. After restarting she was able to put it into gear and move forward. I took it to the dealer and they have had it for over 4 days. I finally got word that they are getting the parts tomorrow. I asked what they were replacing and they said the transmission valve body.

So loved driving this car. By far the best minivan we have ever driven, but now my wife is nervous. She is going to be worried about being stranded while taking our four kids around town. Has anyone else had a similar experience and has a new transmission valve body solved others' problems reliably?

Nervous about my most expensive car purchase yet.
-Joe[11]

- 2017 Pacifica with 309 miles stalls on highway

  Well I never thought it would happen to me despite reading this thread before I bought the car 2 weeks ago. The car was manufactured in July 2017 and I thought they would have all the bugs worked out by now. Well I was very wrong!

  On Sept 14th at around 830am I was on my way to work on highway 101 traveling roughly 65mph in the left most lane. I had the ACC(adaptive cruise control on) when all of a sudden I had a sudden jerk and loss of power with no ability to accelerate, no power steering, and various warning lights flashing. With no left shoulder, I had to try and get to the right shoulder all the while dodging heavy traffic going at a much faster speed than me. I had made it to the second to right lane when I noticed a semi truck barreling down not realizing that I was traveling at a much slower speed than traffic. I looked down and saw I was only traveling 16mph at the time. When the semi realized how slow I was traveling, he slammed on his brakes and laid on the horn. I could see smoke coming out the side of his truck likely from him locking up. I thought for certain that he was going to hit me and prepared for impact. Luckily for me, the truck was able to swerve into the next lane over and I finally made it to the right shoulder with my heart pounding. As I sat there trying to figure out what the heck happened, I remembered this thread and couldn't believe this happened to me.

---

[11]    http://www.pacificaforums.com/forum/200154-post1.html

00130367

I remember people saying they would turn off their car and then restart it and everything would be back to normal. I tried this but my car would barely turn over and when it finally did, I hobbled to the nearest exit which was about 250ft away. The max speed I could obtain was 16mph and it was so shaky and jerky. No matter how hard I depressed the accelerator, the car would not go faster than 16mph. I finally made it to a side street where I parked the car and phoned for roadside assistance.

The car was towed to the dealer I purchased the car from and they were extremely concerned with what had happened and immediately took my car in and gave me a Jeep Grand Cherokee loaner and apologized. I know it's not the dealers fault that this happened as the car was brand new when I bought it. When I think about how bad the situation could have turned out, I know that I can never get back in this car again and will never put my family in it for fear of this happening again.

With only 309 miles on the car, I hope Chrysler can look into this and start the buyback process as I have no intention of driving this car ever again. Have any of you had experience with this?

I took some videos after I got the car off the highway to show the dealer some of what was happening. I've taken several videos but will post 2 of them to youtube for you all to take a look at. Any insight you all may have into this would be helpful as I move forward.[12]

- Please add me to the list my car shut off today while I was driving. Lucky for me it was on my street at 15 mph or so and my kids weren't in the car. I took the it to the local dealer should find out something tomorrow but after reading y'alls post they won't find anything. I hope this get fixed I just got the car a two weeks ago. Please keep me posted on what y'all find out.[13]

- Add me to the list. Was driving approx 60 mph on 5 lane highway. Vehicle shut off. Thankfully was able to pull over onto a burm. Had same error message about needing to shift to park. However, the shifter wouldn't turn for about 30 seconds. Car also wouldn't turn off. Could've easily been in a major accident. 5 kids in the van. 2017 Pacifica, gas.

---

[12]   http://www.pacificaforums.com/forum/474-chrysler-pacifica-minivan-issues-problems/2937-vehicle-shut-off-while-driving-41.html

[13]   http://www.pacificaforums.com/forum/474-chrysler-pacifica-minivan-issues-problems/2937-vehicle-shut-off-while-driving-42.html

Dealer said no error codes. Vehicle had less than 5k miles. At 8k miles now. Problem hasn't returned yet.[14]

- Ok, So, apparently I'm not alone. I started a new topic and then discovered this thread.

5 Day old 2017 Pacifica Touring L with under 100 miles.

While turning left at a very busy highway intersection the engine shut down. I had the entire family in the car (wife and 3 children) and it could have been a very bad accident. Thankfully two men in a red truck with a trailer blocked the street so that we were safely out of the car.

I had both hands on the wheel and it just went dead. I put it in park and tried to restart and nothing happened. A bunch of people helped to push the car out of the way and in to a gas station. After several attempts the van started.

This is the second time this has happened. When I was driving it home from the dealer (immediately after purchase) the engine shut off while at a red light. I put in in park and it started right back up.

It is the weekend so I will have to wait until tomorrow to have it towed to the dealership (I do not think that it is safe to drive).

This is a very serious safety situation. My family could have been seriously injured or killed last night.

I am not putting my family in this car unless they have a fix that they know with certainty has corrected the problem.[15]

25.      Despite these widespread complaints about a specific defect that has reduced the Subject Vehicle's value and led to dangerous complete power loss events, Chrysler has failed to (1) inform consumers of the defect; (2) attempt to repair or replace the defective parts at issue; or (3) reimburse owners and lessees for the loss of value they have all experienced.

---

[14]     http://www.pacificaforums.com/forum/474-chrysler-pacifica-minivan-issues-problems/2937-vehicle-shut-off-while-driving-44.html

[15]     http://www.pacificaforums.com/forum/474-chrysler-pacifica-minivan-issues-problems/2937-vehicle-shut-off-while-driving-46.html

26.     Chrysler is aware that safety is of primary importance to car purchasers in general, and minivan owners in particular, and therefore Chrysler warrants, represents, and emphasizes "safety" as a key feature of its Pacifica minivan. Chrysler has engaged in a long term advertising campaign in which it promised using advanced technology to produce very safe vehicles, that it prioritizes safety, and that it continually strives to make its vehicles safer. For example, Chrysler has continually utilized an advertising and branding campaign focused on safety, which is highlighted throughout vehicles brochures, as well as Chrysler's websites, social media, television advertisements, and nontraditional marketing that are designed to increase customer awareness of Chrysler's purported emphasis on safety.

27.     For example, on its website, www.chrysler.com/pacifica, Chrysler states:

- "2017 IIHS TOP SAFETY PICK"
- "Chrysler Pacifica has the highest safety rating in its class"
- "The Chrysler Pacifica is the only minivan to be named an 2017 IIHS Top Safety Pick...No other minivan earned this honor."
- "2017 CHRYSLER PACIFICA SAFETY AND SECURITY"
- "FEEL SAFE AND SECURE"
- "With more than 100 standard and available safety and security features plus several innovations, the Chrysler Pacifica has the highest safety rating in its class."

28.     Chrysler's Pacifica television commercials also promote the minivan's purported safety. In one 30-second commercial, comedian Jim Gaffigan is filmed placing his young children in the minivan, stating "You know who drives one of these all new Pacificas? A considerate and caring father," and then touting "all these safety features."[16]

---

[16]     https://www.ispot.tv/ad/A5Mp/2017-chrysler-pacifica-good-for-your-dad-brand-ft-jim-gaffigan#

29.     In its brochure for the 2017 Chrysler Pacifica, Chrysler repeats and reinforces the overall safety message, stating that "Your family's safety and security are what matter most."

30.     In its social media advertising, including on Facebook, Chrysler also touts the purported safety of its Pacifica vehicle:



31.     As a result of the uniform defect at issue, Plaintiff and Class members suffered injury in fact including because their Subject Vehicles were not as warranted at the time of sales or lease, and thus were worth less than what Plaintiff and Class members were willing to pay for their Subject Vehicles, without knowledge of the undisclosed defect.

32.     Chrysler's conduct has had the effect of denying those who own or lease the Pacifica vehicles their full rights under the law. These rights include consumers' pre-

00130367

purchase or lease rights to fair and reasonable information as well as post-purchase or lease rights. Chrysler also has failed to fully, adequately, and effectively tell consumers what they must do if the Subject Vehicles they are driving unintentionally and suddenly decelerate. To do so, and to do so effectively, would protect lives, but would also constitute an admission of a problem, so Chrysler refuses to act responsibly and morally, choosing profit instead. Chrysler has chosen to deceive its customers rather than educate them with life-saving information about its vehicles.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of a proposed Nationwide Class defined as:

> All persons who purchased or leased a 2017 model year, non-hybrid Chrysler Pacifica in any of the fifty States until the date notice is provided to the Class.

34.     In the alternative to the Nationwide Class, Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of a proposed Florida Class defined as:

> All persons who purchased or leased a 2017 model year, non-hybrid Chrysler Pacifica in Florida until the date notice is provided to the Class.

35.     Excluded from the Classes are: (a) Chrysler, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Chrysler Dealers and Chrysler Dealers' officers and directors; (b) Plaintiff's Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; (d) those who have claims for personal injury or wrongful death as a result of the sudden unintended power loss of their

00130367

18

Subject Vehicles; and (e) persons or entities who or which timely and properly excluded themselves from the Class.

36.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

37.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The Class consists of more than one million people. Therefore, the Class is so numerous that joinder of all members would be impracticable. The sheer number of Class members makes joinder of all members impracticable.

38.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact that predominate over any questions affecting individual Class members, including:

    a.      whether the Subject Vehicles are defective;

    b.      whether Chrysler misrepresented the standard, quality, and characteristics of the Subject Vehicles;

    c.      whether Chrysler's misrepresentations regarding the standard, quality and characteristics of the Subject Vehicles were likely to mislead reasonable consumers;

    d.      whether Chrysler's omission that the Subject Vehicles were defective and prone to complete power loss was a material fact that a reasonable consumer would be expected to rely on when deciding whether to

purchase a vehicle;

e.     whether Plaintiff and the other Class members have been damaged and, if so, the extent of such damages; and

f.     whether Plaintiff and the other Class members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

39.     Chrysler engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

40.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class members because, among other things, Plaintiff and the other Class members were injured through the substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all other Class members, and no defense is available to Chrysler that is unique to any one Plaintiff.

41.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class members. Additionally, Plaintiff has retained counsel competent and experienced in complex class action litigation. Thus, the Class' interests will be fairly and adequately protected by Plaintiff and her counsel.

00130367

42.   **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Chrysler, making it impracticable for Class members to individually seek redress for Chrysler's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

### Violation of the Florida Deceptive and Unfair Trade Practices Act
### Florida Stat. §§501.201, *et seq.*

43.   Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

44.   This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* ("FDUTPA"). The stated purpose of the FDUTPA is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

00130367

45.     Plaintiff is a consumer as defined by Fla. Stat. §501.203. The Subject Vehicles are goods within the meaning of the FDUTPA. Chrysler is engaged in trade or commerce within the meaning of the FDUTPA.

46.     Florida Statute §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." The FDUTPA also prohibits false and misleading advertising.

47.     Defendant has violated the FDUTPA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

48.     In the course of conducting business, Defendant committed unfair and deceptive business practices by, among other things, making representations of material fact that Subject Vehicles are safe, and omitting the material fact that it manufactured and sold the Subject Vehicles with a uniform defect that can cause sudden, complete loss of motor power and other related problems.

49.     The facts concealed or not disclosed by Defendant to Plaintiff and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase a Subject Vehicle or pay a lesser price. Had Plaintiff and the Class members known about the defect leading to sudden, unintended power loss, they would not have purchased Subject Vehicles or would have paid less for them.

50.     Plaintiff and the other Class members were injured and incurred actual damages as a result of Defendant's conduct in that they purchased or leased Subject Vehicles

that are defective and unsafe, overpaid for their Subject Vehicles and did not receive the benefit of their bargain, paid for repairs or attempted repairs of the defect, their Subject Vehicles have suffered a diminution in value, and suffered other injuries proximately caused by Defendant's misconduct as alleged herein. These injuries are the direct and proximate consequence of Defendant's misconduct and violation of Fla. Stat. §501.201.

51.     Pursuant to Fla. Stat. §501.211(1), Plaintiff and the Class seek an order for restitution, disgorgement, and damages.

52.     Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiff and the Class make claims for damages, attorneys' fees and costs.

**COUNT II**
**Breach of Implied Warranty of Merchantability**

53.     Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

54.     Defendant is and was, at all relevant times, a merchant with respect to the Subject Vehicles and manufactured, distributed, warrantied and/or sold the Subject Vehicles.

55.     A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold was implied by law in the instant transaction.

56.     Plaintiff and the other Class members purchased the Subject Vehicles that were manufactured and sold by Defendant in consumer transactions.

57.     The Subject Vehicles, when sold and at all times thereafter, were not in merchantable condition and were not fit for the ordinary purpose for which cars are used. The Subject Vehicles left Defendant's possession and control with defects leading to complete loss of motor power that rendered them at all times thereafter unmerchantable, unfit for

00130367

ordinary use, unsafe, and a threat to public safety. Plaintiff and the other Class members used their Subject Vehicles in the normal and ordinary manner for which the Subject Vehicles were designed, intended, and advertised.

58.     Defendant knew before the time of sale to Plaintiff, or earlier, that the Subject Vehicles were produced with defects that lead to sudden and unintentional complete loss of motor power, rendering the Subject Vehicles unfit for their ordinary purpose.

59.     Despite Plaintiff's and the other Class members' normal and ordinary use, maintenance, and upkeep, the Subject Vehicles are equipped with defective parts that lead to sudden, unintentional complete loss of motor power as a result of a manufacturing or design defect that existed at the time Defendant transferred the Subject Vehicles from its possession or control. The defect rendered the Subject Vehicles unfit for their ordinary use and incapable of performing the tasks they were designed, advertised, and sold to perform.

60.     As a result, the Subject Vehicles are not of fair or average quality. Nor would they pass without objection in the automotive industry. The fact that the defect results in sudden, unintentional and complete loss of motor power while the vehicle is in operation renders the vehicle unsafe to drive and requires repairs of the Subject Vehicles before safe, ordinary use can resume.

61.     All conditions precedent have occurred or been performed.

62.     Defendant had actual notice of its breach of warranty. Through consumer complaints, Defendant learned that the defect, the existence and ubiquity of which it knew much earlier, has been the subject of publicized consumer disputes nationwide. Its response to the complaints, news articles, and the Center for Auto Safety petition shows actual notice.

24

00130367

63.     Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendant knew when it first made these warranties and their limitations that the defect existed and that the warranties might expire before a reasonable consumer would notice or observe the defect. Defendant also failed to take necessary actions to adequately disclose or cure the defect after the existence of the defect came to the public's attention and sat on its reasonable opportunity to cure or remedy the defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the defect, its breaches of warranty, or otherwise attempt to resolve or address Plaintiff's and the other Class members' claims.

64.     As a direct and foreseeable result of the defect in the Subject Vehicles, Plaintiff and the other Class members suffered diminution in the value of the Subject Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Subject Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

65.     Plaintiff and Class members have had sufficient direct dealings with Chrysler or its agents (dealerships) to establish privity of contract between Plaintiff and the Class members. Notwithstanding this, privity is not required in this case because Plaintiff and Class members are intended third-party beneficiaries of contracts between Chrysler and its dealers; specifically, they are the intended beneficiaries of Chrysler's implied warranties. The dealers were not intended to be the ultimate consumers of the Subject Vehicles; the warranty

agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiff's and Class members' Subject Vehicles are inherently dangerous due to the aforementioned defects and nonconformities.

## COUNT III
### Declaratory Relief

66.     Plaintiff repeats and realleges all paragraphs as if fully set forth herein.

67.     Pursuant to 28 U.S.C. §2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

68.     Defendant marketed, distributed, and sold the Subject Vehicles prone to excessive and dangerous sudden unintended complete loss events on account of Defendant's failure to manufacture such vehicles free of manufacturing defects and with adequate unintentional power loss countermeasures.

69.     Accordingly, Plaintiff seeks entry of the following declarations: (1) the Subject Vehicles lack are defective; (2) all persons who purchased or leased the Subject Vehicles are to be provided the best practicable notice of the defect, which cost shall be borne by Defendant; and (3) Defendant must establish an inspection, repair, and replacement program and protocol and notify Class members of such program, pursuant to which Defendant, including its authorized representatives, and at no cost to Class members, will inspect, repair or replace the Subject Vehicles to prevent the unintentional power loss events at issue.

00130367

## REQUESTS FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter an Order:

a.   certifying the Class under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), as requested herein;

b.   appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

c.   finding that Chrysler engaged in the unlawful conduct as alleged herein;

d.   awarding Plaintiff and the other Class members damages;

e.   awarding Plaintiff and the other Class members restitution and disgorgement of monies Defendant acquired through its violations of the law;

f.   awarding Plaintiff and the other Class members declaratory and injunctive relief;

g.   requiring Chrysler to repair or replace the defective parts on the Subject Vehicles;

h.   awarding Plaintiff and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

i.   awarding Plaintiff and the other Class members reasonable attorneys' fees, costs, and expenses; and

j.   granting such other relief as the Court deems just and appropriate.

00130367

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this Class Action Complaint so triable.

Respectfully submitted,

Dated: February 1, 2018

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (CA149343) *
THOMAS J. O'REARDON II (CA 247952) *
PAULA R. BROWN (CA 254142) *

TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW *
ERICH P. SCHORK *
1 North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: 312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

MORGAN & MORGAN, P.A.
T. MICHAEL MORGAN (FSB #0062229)
20 North Orange Ave., Suite 1600
Orlando, FL 32801
Tel: 407/420-1414
407/641-5846 (fax)
mmorgan@forthepeople.com

*Attorneys for Plaintiff Barbara Vaughn*

\*        *pro hac vice motion forthcoming*

00130367